UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARBLE POINT ENERGY, LTD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:06CV1656 HEA |
| ) | |
| CRUSADER FINANCIAL SERVICES, INC., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the court on Defendant Na's Motion to Dismiss the First Amended Complaint, [Doc. 72]. The parties have fully briefed the issues. For the reasons set forth below, the Motion is granted.

### **Facts and Background**[1]

Plaintiff is a Canadian limited liability company with its principal place of business in Calgary, Canada. Plaintiff originally brought this action against Defendant Na, Crusader Financial Services, Inc., Crusader LTD, Daniel J. Lodderhose a/k/a Daniel Shea, Alexander Lodderhose, Jonathan Lodderhose and John Does 1 through 10 based solely on state law claims alleging a scheme to

---

[1] This recitation of facts is taken from the First Amended Complaint and the parties' submissions on the pending motion. It is set forth for the purposes of this motion only and is not intended to relieve any party of the necessary proof of any fact in any later proceedings in any court.

defraud Plaintiff of approximately $15,000,000. The Court's jurisdiction was originally based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2).

Plaintiff requested entry of default against Defendant Na on February 23, 2007. The Clerk of the Court entered the default on February 27, 2007.

On August 8, 2007, Plaintiff filed a notice of voluntarily dismissal of Crusader Financial Services, Inc., Crusader LTD, Daniel J. Lodderhose a/k/a Daniel Shea, Alexander Lodderhose, Jonathan Lodderhose, pursuant to a settlement among these parties. The Court granted the dismissal of these defendants on August 10, 2007.

Plaintiff filed a Motion for Default Judgment against Defendant Na on June 20, 2008. The Court granted the Motion on June 23, 2008. Thereafter, on October 15, 2008, Plaintiff filed a Motion to Reopen Case, Set Aside Final Order and Judgment of Default and for Leave to File an Amended Complaint against Defendant Na. The Motion was granted on October 20, 2008. The First Amended Complaint was filed on October 21, 2008. Defendant Na is the only defendant against whom Plaintiff seeks recovery.[2]

---

[2] On September 25, 2008, Plaintiff voluntarily dismissed Defendants John Does 1 through 10. Although the First Amended Complaint names all former defendants in the style of the case, Plaintiff sets out in the First Amended Complaint that it is has dismissed without prejudice its claims against Lodderhose/Shea, Crusader Financial, Crusader Ltd., Alexander Lodderhose, and Jonathan Lodderhose, and that "nothing in this First Amended Complaint asserts new claims against these parties, nor does anything in this First Amended Complaint revive or reassert any

In addition to the state law claims previously asserted, the First Amended Complaint contains a new claim under the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. § 1962.[3] Plaintiff's First Amended Complaint describes an intricate and elaborate scheme whereby Defendants allegedly defrauded Plaintiff of 15.4 Million Dollars. Plaintiff claims that Defendants and others formed a "partnership" and that the partnership persuaded Marble Point to part with its money, promising the issuance of a guarantee bond by ABN AMRO to collateralize a much larger credit facility. Plaintiff further alleges that the bond was fraudulent and that, through "laundering" the funds by passing them across state lines and international borders, Defendants have absconded with its money.

Defendant Na, the only remaining defendant in this case, filed his motion to dismiss for lack of personal jurisdiction, for failure to state a cause of action under RICO, based upon *forum non conveniens*, and improper procedure. Because the

---

claims against these parties that have been previously dismissed without prejudice."
   Likewise, the First Amended Complaint fails to state any claims against Defendants John Does 1 through 10, which the Court construes as an abandonment of any claims Plaintiff has against the Doe Defendants.

   [3] Section 1962 of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

Court concludes that it lacks personal jurisdiction over Defendant Na, the Court need not address Defendant's remaining arguments.

## Discussion

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff has the burden of making a *prima facie* showing that personal jurisdiction exists. *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir.2008) (citations omitted). The Court views the evidence in the light most favorable to Plaintiff, and resolves factual conflicts in Plaintiff's favor. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir.1996). Even so, Plaintiff must produce some evidence; conclusory allegations are insufficient. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir.2004). Plaintiff "must state sufficient facts in the complaint to support a reasonable inference that [Defendant] can be subjected to jurisdiction within the state." *Id*, at 1072, quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974). A party may rely on affidavits, exhibits, or other evidence to make a prima facie case of jurisdiction. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004). "The party seeking to establish the court's *in personam* jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir.2003).

To exercise personal jurisdiction over a nonresident defendant, the Court must ordinarily determine (1) whether that defendant is subject to the forum state's long-arm statute and (2) whether the exercise of personal jurisdiction would comport with due process. *Primus Corp. v. Centreformat Ltd.*, 221 Fed. Appx. 492, 493 (8th Cir.2007) (citing *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir.2004)). Both the Eighth Circuit and the Missouri Supreme Court have noted that Missouri's long-arm statute extends jurisdiction to all cases where due process permits the exercise of personal jurisdiction. *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir.2000) (citing *State v. Pinnell*, 454 S.W.2d 889, 892 (Mo.1970) (en banc)); *Romak*, 384 F.3d at 984 (citation omitted). Thus, this Court need only consider whether the exercise of jurisdiction in this case would comport with due process; if it does, Defendant Na would be subject to the long-arm statute, and if it does not, the claims will be dismissed for want of personal jurisdiction. *Id*.

Due process does not support the exercise of personal jurisdiction by a state over a nonresident who has no meaningful contacts or ties to that state. *Int'l Shoe Co. v. Washington.*, 326 U.S. 310, 319 (1945). Instead, "[d]ue process requires 'minimum contacts' between a nonresident defendant and the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Steinbuch*, 518 F.3d at 585 (quoting *World-Wide Volkswagen*

*Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).  These contacts must be such that the defendant "should reasonably anticipate being haled into court" in Missouri. *World-Wide Volkswagen*, 444 U.S. at 297.  "The minimum contact inquiry focuses on whether the defendant [has] purposely availed itself of the privilege of conducting activities within the forum state and thereby invoked the benefits and protections of its laws." *Steinbuch*, 518 F.3d at 586 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  There must be some act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Epps*, 327 F.3d at 647-48, citing *Hanson*, 357 U.S. at 253.  See also *Asahi Metal Indus. Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 109-12 (1987).  The defendant's contacts must be more than "random, fortuitous, or attenuated." *Id.*, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

In determining whether a nonresident defendant's contacts with Missouri are sufficient to subject it to the personal jurisdiction, the Court considers five factors, the first three of which are the most important: (1) the nature and quality of that defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the connection of the cause of action to the contacts; (4) the interest of the forum state in the litigation; and (5) the convenience or inconvenience to the parties. *Miller v.*

*Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1091 (8th Cir 2008); *Steinbuch*, 518 F.3d at 586. With respect to the third factor, the Supreme Court has differentiated between general and specific personal jurisdiction. See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). A court may exercise specific personal jurisdiction over a nonresident defendant where the cause of action arises from, or is connected to, the defendant's contacts with the forum state.[4] *Dever*, 380 F.3d at 1073; *Burger King,* 471 U.S. at 463.[5]

---

[4] Where a defendant has "continuous and systematic" contacts with a forum state, courts in the state may exercise general personal jurisdiction over the defendant, even where the cause of action or alleged injury is unrelated to those contacts or has no connection with the forum state. See *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir.2008) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)).

Plaintiff advises the Court in its memoranda that it is relying on specific personal jurisdiction over Defendant Na, thereby abandoning any general personal jurisdiction arguments previously made.

[5] Plaintiff vaguely argues that Section 1965 provides a basis for "nationwide" jurisdiction over Defendant Na. This argument is without merit since all other defendants have been dismissed, thereby nullifying the premise upon which Plaintiff may rely for jurisdiction over Na.

Section 1965 provides in relevant part as follows:

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof....

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

**Nature, Quality and Quantity of Defendant's Contacts with Missouri**

Defendant is a citizen and resident of Indonesia. He has not been to Missouri, nor does he own property in Missouri. Although Plaintiff claims Defendant had a continuing relationship with a Missouri citizen, there is no evidence that he has conducted any ongoing business in Missouri. He has no bank accounts in Missouri. The sole connection with Missouri alleged by Plaintiff was the receipt of funds from a Missouri bank account. Plaintiff's attempts to bootstrap its position regarding personal jurisdiction over Na through the citizenship and action of former defendant, Lodderhose, are woefully ineffective. The Court's personal jurisdiction analysis must be limited in its focus solely to the contacts of Na with this state in order to satisfy due process requirements. Defendant Na must have sufficient minimum contacts with the State, and the contacts of the other defendants are completely insignificant *vis a vis* Na.

---

18 U.S.C. § 1965. Courts agree that section 1965 allows nationwide service of process for RICO claims. See, e.g., *Gatz v. Ponsoldt*, 271 F.Supp.2d 1143, 1152 (D.Neb.2003); *BankAtlantic v. Coast To Coast Contractors, Inc.*, 947 F.Supp. 480, 484 (S.D.Fla.1996); *Omni Video Games, Inc. v. Wing Co., Ltd.*, 754 F.Supp. 261, 263 (D. R.I.1991). Federal courts differ on the interpretation of section 1965 as it relates to personal jurisdiction, however, and the Eighth Circuit Court of Appeals has not yet addressed the issue. *Gatz*, 271 F.Supp.2d at 1152. See also *BankAtlantic*, 947 F.Supp. at 485 ("[T]here has been some confusion among the courts regarding nationwide service of process and personal jurisdiction in RICO actions; namely, whether to apply subsection § 1965(b) or subsection (d) in order to assess personal jurisdiction in a particular case").

"A single tortious act is sufficient to support personal jurisdiction consistent with due process standards," *Peabody Holding Co., Inc. v. Costain Group PLC*, 808 F.Supp. 1425, 1437 (E.D.Mo.1992), however, "[a] plaintiff may not invoke tortious long-arm jurisdiction consistent with due process where the nonresident defendant had no contact with Missouri besides the extraterritorial acts having consequences in Missouri." *Id*. *R & K Lombard Pharmacy Corp. v. Medicine Shoppe Intern., Inc.* 2008 WL 648509, 5 (E.D.Mo.) (E.D.Mo.,2008). Plaintiff's arguments that sending the money out of Missouri from a Missouri bank creates jurisdiction fails the due process test.

**Connection of the Cause of Action to the Contacts**

Plaintiff's allegations of the contacts with Missouri are very remotely connected with Missouri. Plaintiff is a Canadian company. Defendant Na is an Indonesian citizen. The scheme began outside of Missouri, and all of the acts allegedly taken by defendants to instigate the scheme occurred outside of Missouri. Ultimately, according to Plaintiff's claims, money was transferred to Defendant Na from Truman Bank, a Missouri bank. This, however, is a far cry from connecting Defendant with the State of Missouri such that Plaintiff has established that Defendant Na "purposely availed" himself of the privilege of conducting activities within the state of Missouri, or that he expressly directed his activities to citizens of

Missouri. *Burger King*, 471 U.S. at 475. The receipt of funds from a Missouri bank clearly falls within the "random," "fortuitous" and attenuated" category and is expressly outside the reach of the exercise of personal jurisdiction under a due process, minimum contacts analysis. *Steinbach*, 518 F.3d at 586. To conclude that Na must be subject to personal jurisdiction in Missouri based on these contacts would entirely offend the "traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316.

**Interest of the Forum State in the Litigation**

Plaintiff is a Canadian citizen. Defendant is an Indonesian citizen. The actions allegedly taken by this Defendant all occurred outside the State of Missouri. The single event which Plaintiff utilizes in attempt to connect Defendant with the State of Missouri was the transfer of its funds from the Missouri bank account to his accounts in Indonesia. No Missouri citizen is alleged to have been injured or harmed in the State of Missouri. Defendant did not direct his activities to the forum state, nor can it be inferred that any such activities were directed toward the forum state. Clearly, Missouri is not the focal point of the alleged enterprise or conspiracy. Indeed, even the brunt of the alleged activities were not felt in Missouri, as the harm alleged, the loss of over 15 million dollars, was suffered by a Canadian company.

**Convenience or inconvenience to the parties**.

Obviously, it would be inconvenient for Defendant Na, an Indonesian citizen, to travel to Missouri to defend this matter. Na has never been to the State of Missouri. Requiring Defendant to travel to the state of Missouri would be an undue burden, particularly in light of the fact that Defendant Na is elderly. Although Plaintiff has chosen this forum to file its action, even Plaintiff cannot present compelling reasons why it is more convenient for it to litigate in the State of Missouri than a forum closer to home with more at stake than the State of Missouri. On balance, the minimal convenience Plaintiff alleges is dramatically outweighed by the inconvenience which would be suffered by Defendant having to travel to this forum.

## Conclusion

Plaintiff has failed to meet its burden of establishing a *prima facie* case of personal jurisdiction. In particular, the first three factors of the minimum contacts indisputably establish that Defendant Na's contacts with the State of Missouri were random, fortuitous and attenuated. Likewise, the other two factors also negate the Court's authority to exercise jurisdiction over Defendant Na. Without the minimum contacts to satisfy the constitutional requirements of due process, this Court cannot exercise jurisdiction over Defendant Na. Plaintiff's claims for relief against

Defendant Na will be dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss for Lack of Personal Jurisdiction, [Doc. No. 72] is**GRANTED**,

**IT IS FURTHER ORDERED** that Defendant Na is dismissed from this action.

**IT IS FURTHER ORDERED** that because all other Defendants have been dismissed from this action, this action is **DISMISSED**.

Dated this 7th day of July, 2009.

HENRY EDWARD AUTREY
**UNITED STATES DISTRICT JUDGE**